[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 566.]

THE STATE OF OHIO, APPELLANT, *v.* TRIPLETT, APPELLEE.

[Cite as *State v. Triplett*, 1997-Ohio-182.]

*Criminal law—Fifty-four-month delay between indictment and trial not a violation of Sixth Amendment right to a speedy trial, when.*

(No. 95-1708—Submitted September 25, 1996—Decided June 11, 1997.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 67450.

_____

{¶ 1} On March 7, 1989, appellee, Narveter Triplett, was arrested by Warrensville Heights police for drug abuse and possession of criminal tools. Triplett was released the day she was arrested, pending grand jury review. No bond was required, since no formal charges were pending—the drugs confiscated had to be tested by a forensic laboratory, and police were still gathering information.

{¶ 2} On her booking slip, Triplett listed her address as 4258 East 133d Street, Cleveland, and stated that she had lived there for twenty-five years. On May 2, 1989, Triplett was indicted for drug abuse and possession of criminal tools. A summons was issued on May 9, 1989. On that same date, the summons was sent, along with a copy of the indictment, by certified mail, return receipt requested, to the above address, ordering Triplett to appear for arraignment on May 19. The letter was never claimed. When Triplett failed to appear for her arraignment, a capias was issued for her arrest. Over four years later, on October 26, 1993, Triplett was arrested on the capias during a sting operation by the Cuyahoga County Sheriff's Department. She was arraigned on October 28, 1993.

{¶ 3} On November 10, 1993, Triplett appeared before a trial judge to read a proposed plea agreement into the record. The judge asked Triplett where she had been since the time of her original arrest. She told him that she had been working and was unaware of the pending charges. The judge then *sua sponte* raised the

issue of whether Triplett had received a speedy trial. Triplett's counsel then requested a continuance in order to file a motion to dismiss for speedy trial reasons. On November 17, 1993, Triplett filed a motion to dismiss for violation of her right to a speedy trial under the Sixth Amendment to the United States Constitution and R.C. 2945.71.

{¶ 4} On December 20, 1993, the trial court conducted a hearing on the motion. The state's first witness was Triplett's arresting officer, Sergeant Richard Moeller of the Warrensville Heights Police Department, who testified that Triplett had provided the Cleveland address on her booking slip. He also testified that Triplett was released without being charged because the evidence taken at the scene had yet to be analyzed by the Bureau of Criminal Investigation.

{¶ 5} Terry Murphy, a docket clerk at the Cuyahoga County Clerk's Office, testified regarding procedures for notifying defendants of an indictment. After an indictment is filed, a summons with a copy of the indictment is sent to the defendant by certified mail. At the same time, a summons is sent by ordinary mail. The summons sent by ordinary mail tells the defendant to come to court to pick up the indictment. The certified mail summons is recorded on the court's criminal docket, but the ordinary mail summons is not recorded.

{¶ 6} Murphy identified the certified mail that had been sent to Triplett at 4258 East 133d Street, Cleveland, Ohio. It was postmarked May 9, 1989. He also identified two notices to claim the certified mail, attached to the envelope and dated May 10, 1989 and May 15, 1989. The word "unclaimed" was stamped on the envelope, indicating that no one had picked up the certified mail at the post office after an unsuccessful home delivery. Murphy testified that if the certified mail had been refused, the envelope would have been marked "refused" rather than "unclaimed."

{¶ 7} The state's last witness was Lieutenant Dan Pukach of the Cuyahoga County Sheriff's Department. He testified that the capias originally issued upon

Triplett's failure to appear became one of twelve thousand arrest warrants outstanding at any given time in Cuyahoga County, and one of one thousand capias orders in an average month. The eight deputies assigned to execute warrants give priority to cases involving murder, robbery, and rape.

{¶ 8} Pukach was involved with the Ohio Attorney General's Office in a sting operation to clear up outstanding warrants. He testified that Triplett was arrested on October 26, 1993, after a letter was sent to her at 4258 East 133d Street, stating that she was entitled to a consumer refund as a part of a successful class action lawsuit and requesting that she respond in person to claim her settlement. Triplett took the bait and was arrested on the outstanding capias.

{¶ 9} Triplett testified that after her original arrest in March 1989, she was told by a police officer that she was being released because of a lack of evidence. She stated that she became aware of the outstanding charge against her only after the sting operation in October 1993. Triplett testified that at the time of her original arrest she had given police the address where she had resided since 1986 with her four children and mother. At the time of the December 1993 hearing, she still lived there. She claimed that she had never received a summons in May 1989 and never knew of any postal slips that had been left at her house indicating that a certified letter was waiting for her at the post office.

{¶ 10} In a June 10, 1994 ruling, the trial judge found that Triplett's statutory right to a speedy trial was not violated, but that her constitutional right thereto was violated, and thus granted the motion to dismiss. The state appealed, and the Court of Appeals for Cuyahoga County affirmed the judgment of the trial court.

{¶ 11} This cause is now before this court upon the allowance of a discretionary appeal.

_____

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, and George J. Sadd, Assistant Prosecuting Attorney, for appellant.

James A. Draper, Cuyahoga County Public Defender, and Donald Green, Assistant Public Defender, for appellee.

_____

**PFEIFER, J.**

{¶ 12} We consider in this case whether the fifty-four-month delay between Triplett's indictment and trial constituted a violation of her Sixth Amendment right to a speedy trial. Because Triplett precipitated the delay by failing to claim certified mail informing her of her indictment, we find that the delay did not violate Triplett's constitutional rights.

{¶ 13} In *United States v. MacDonald* (1982), 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704, the United States Supreme Court stated the purpose of the Sixth Amendment's Speedy Trial Clause:

"The Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."

{¶ 14} In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the court set forth a four-part test to determine whether the state has violated an accused's right to a speedy trial. The four factors include (1) the length of the delay, (2) the reason the government assigns to justify the delay, (3) the defendant's responsibility to assert his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530-532, 92 S.Ct. at 2192-2193, 33 L.Ed.2d at 116-118.

{¶ 15} In *Doggett v. United States* (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, the court found that the eight-and-one-half-year delay between the accused's indictment and arrest violated his Sixth Amendment rights. Doggett was secretly indicted on federal drug charges, but left the country before the Drug Enforcement Agency could secure his arrest. Doggett was thereafter imprisoned in Panama, and upon his release in 1982, moved to Colombia. Doggett eventually returned to the United States two and one-half years after the issuance of the indictment. From that point until his arrest, he lived openly under his own name, married, earned a college degree, and found steady employment. The United States Marshal's Service eventually located him in 1988 during a simple credit check on individuals with outstanding warrants. There was no evidence that Doggett had ever known of the charges against him until his arrest.

{¶ 16} Of special concern to the court in *Doggett* was the fourth factor of the *Barker* test, prejudice to the defendant. While Doggett was unable to demonstrate specifically any prejudice from the delay, the court found that the lengthy lag was presumptively prejudicial. *Id.* at 655, 112 S.Ct. at 2693, 120 L.Ed.2d at 530. Weighing that factor with the rest of the *Barker* factors, the court concluded that the delay violated Doggett's Sixth Amendment rights.

{¶ 17} In the present case, the *Barker* factors weigh more heavily on the side of the state. The first factor, the length of the delay, is a "triggering mechanism," determining the necessity of inquiry into the other factors. *Id.*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The fifty-four-month delay in this case is certainly enough to trigger that inquiry—one year is generally considered enough. *Doggett*, 505 U.S. at 652, 112 S.Ct. at 2691, 120 L.Ed.2d at 528, fn. 1. However, the delay in this case, while significant, did not result in any infringement on Triplett's liberty. In fact, according to her own testimony, she was completely ignorant of any charges against her. The interests which the Sixth Amendment was designed to protect—freedom from extended pretrial incarceration and from the

disruption caused by unresolved charges—were not issues in this case. Therefore, while the first factor does technically weigh in Triplett's favor, its weight is negligible.

{¶ 18} The second factor to consider is the reason the government assigns for the delay. The record reveals that the government complied with Crim.R. 4(D) by sending Triplett a summons and a copy of the indictment via certified mail, and at the same time by ordinary mail. Only the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor. *Doggett*, *supra*, 505 U.S. at 658, 112 S.Ct. at 2694, 120 L.Ed.2d at 532. Triplett's failure to accept the certified mail at the address which she gave police was the precipitating event in the lengthy delay. It was Triplett who was arrested, gave police her address, and then ignored certified mail that arrived soon thereafter. It is this factor which distinguished this case from *Doggett*. To reward Triplett for ignoring this notice would be a repudiation of Crim.R. 4.

{¶ 19} Certainly, the state could have done more to bring Triplett to immediate justice and must shoulder some of the blame for the delay. If the state wishes to prosecute small-time offenders like Triplett, it ought to expend the resources to do so. Still, a person furnishing an address to police upon arrest has some duty to accept certified mail delivered to that same address within a reasonable time. We cannot always prevent such persons from avoiding detection by underzealous police, but we should not allow them to use their slipperiness to claim the protection of the Sixth Amendment. Therefore, we find that the second factor weighs heavily against Triplett in this case.

{¶ 20} The third factor involved is the timeliness of a defendant's invocation of the speedy trial right. Were it proven that Triplett did know of her indictment, perhaps through the ordinary mail service, the third factor would weigh heavily against her. *Doggett*, 505 U.S. at 653, 112 S.Ct. at 2691, 120 L.Ed2d at 529. No matter how dubious Triplett's claim of ignorance is, there is no evidence

6

in the record that she knew of the indictment prior to her arrest in 1993. Finally, it was only at a 1993 hearing in which her plea agreement was being read into the record that the trial judge brought up *sua sponte* the issue of speedy trial. While the proceeding had moved briskly after Triplett's second arrest, the speedy trial issue was not raised until the eleventh hour. We accord only moderate weight to the third factor in Triplett's favor.

{¶ 21} In *Doggett*, the court stated that, as to the fourth factor, the possibility that a defense could be impaired by dimming memories and the loss of exculpatory evidence is the most serious form of prejudice a pretrial delay can bring. 505 U.S. at 654, 112 S.Ct. at 2692, 120 L.Ed.2d at 530. The *Doggett* defendant, like Triplett, was unable to affirmatively show that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence. However, recognizing that "time's erosion of exculpatory evidence and testimony 'can rarely be shown,'" the court wrote that "'we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Id.* at 655, 112 S.Ct. at 2692-2693, 120 L.Ed.2d at 530-531, quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2182, 33 L.Ed.2d at 118. The court held that while such presumptive prejudice cannot alone carry a Sixth Amendment claim, "it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett* at 656, 112 S.Ct. at 2693, 120 L.Ed.2d at 531.

{¶ 22} For the *Doggett* court, the role that this presumptive prejudice is to play related directly to the reason for the delay. Where the defendant himself causes the delay, by going into hiding, for instance, and the government pursues him with reasonable diligence, a speedy trial claim would fail. *Id*. at 656, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Where the delay is caused by the government's intentional footdragging in order to gain some impermissible advantage at trial, the delay will be weighed heavily against the government. "Between diligent prosecution and

bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Id*. at 656-657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Negligence, however "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id*. at 657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531-532. The longer the delay due to official negligence, the less tolerable the delay becomes. *Id*. at 657, 112 S.Ct. at 2693, 120 L.Ed. 2d at 532. The eight-and-one-half-year delay in Doggett's case, with six years directly attributable to the government's negligence, was too much for the court to countenance.

{¶ 23} We do not find the time span in this case to be as prejudicial as the period in *Doggett*. The fifty-four months at issue in this case is also exceedingly long, but it is the cause of that delay that sets this case apart from *Doggett*. In *Doggett*, there was no evidence that the accused ever knew that he had been charged with a crime or that the government had ever attempted to notify him of his indictment. He was never even in police custody until eight and a half years after his indictment. Triplett was arrested, immediately booked, and indicted soon thereafter, and a certified mail notice of her indictment was then sent to the address *she* had provided to police after her arrest. Hence, any delay after that point was her fault.

{¶ 24} Of course, police did not do all they could to apprehend Triplett. There is nothing in the record suggesting that police made any effort to go to the address in person to attempt to find Triplett. While this factor should be weighed, on balance, against the state, we do not find it fatal to the prosecution.

{¶ 25} The length of the delay and the prejudice presumed to arise from that, as well as Triplett's timely assertion of her Sixth Amendment rights, are factors in her favor under a *Barker* analysis. Still, none of those factors ever would have become factors without Triplett's own hampering of her Sixth Amendment rights. Triplett cannot overcome the fact that the genesis of the delay was her failure

to accept certified mail or her failure to give police a suitable address upon her arrest.

{¶ 26} We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for proceedings consistent with this opinion.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur in judgment only.

_____