JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals from the trial court's dismissal of the indictment against defendant-appellee Edward Smith.
 {¶ 2} The state argues the trial court's decision constituted error as a "windfall of having the criminal charges against [Smith] dismissed," on the basis that the record reflects Smith's actions amounted to an "avoidance of prosecution."
 {¶ 3} Since, however, the record of this case belies the state's argument, the trial court's decision is affirmed.
 {¶ 4} On July 11, 2001 the state issued the indictment in this case against Smith and a co-defendant, Carmen Willis, for an incident that occurred more than a year-and-a-half earlier, i.e., on "January 1, 2000." Willis was charged with "obstructing justice" in that she "hinder[ed]" the "apprehension" of appellee Smith, who was charged with two counts of felonious assault. Smith's two victims, as named in the indictment, were Leon and Mark Willis. Obviously, the victims thus were relatives of the co-defendant.
 {¶ 5} Stephen McGraw, the Cleveland Police detective who investigated the case, testified at the hearing on Smith's motion to dismiss the indictment. In relevant part, McGraw stated his investigation began with the initial complaint, which was taken by patrol officers who responded to the scene, an apartment building located at 13605 Othello Avenue. According to McGraw, the patrolmen's report indicated they had spoken to the victims and to co-defendant Willis as witnesses. The victims named Smith as the person who assaulted them.
 {¶ 6} McGraw testified his subsequent efforts to investigate the case against Smith were fruitless because he could not locate an "Edward Smith" in either the "LEEDS" [sic] or the "Global Systems" computer networks who matched the description given by the victims. Suspecting the non-victim witness had been "evasive" with the patrol officers, McGraw resorted to investigating Carmen Willis. The record indicates he pursued this path beginning in September 2000.
 {¶ 7} In this way, he found that in December 1999, Carmen Willis had listed her address as "2440 East 83rd Street" in Cleveland. This matched an address McGraw had for appellee Smith's brother, Eugene.
 {¶ 8} In order to further his investigation of the incident, therefore, in the summer of 2001, McGraw proceeded to the Cuyahoga County Prosecutor's office to obtain the instant indictment, which listed Carmen Willis as appellee Smith's co-defendant. McGraw hoped by this means to pressure Carmen Willis into providing further information about appellee Smith.
 {¶ 9} On the date of the indictment's filing, therefore, with no indication that Smith ever was arrested on the foregoing charges, the Cuyahoga County Court of Common Pleas clerk's office duly issued a summons on the indictment by both certified and ordinary mail. Smith's address, as given by McGraw and as listed on the envelopes, was "2440 East 83rd Street," Cleveland, Ohio, "44128."
 {¶ 10} On July 24, 2001 the post office returned to the court's clerk the certified mail receipt. The summons upon Smith was returned as "Unclaimed." A representative of the clerk's office later testified for the record that the office had no method of noting returns by the post office of any ordinary mail.
 {¶ 11} On July 27, 2001 the trial court issued a "capias" on the indictment against Smith. The record reflects the Cuyahoga County Sheriff's Department received it that same day.
 {¶ 12} Based upon the court's order, the Sheriff's Department generated an arrest warrant in the instant case. Inserted into the jacket which contained the arrest warrant were additional documents; these gave details regarding Smith's earlier arrests in 1983 and 1999.
 {¶ 13} The Sheriff's Department thus was provided with documents that contained appellee Smith's photographs, date of birth, social security number, description, and known addresses. According to the 1999, more recent, arrest report, Smith stated his address as "1914 Dennison" Avenue in Cleveland. Only the returned certified mail receipt from the failure to serve his indictment in the instant case bore the East 83rd Street address.
 {¶ 14} On March, 26, 2002 two sheriff's deputies proceeded to the East 83rd Street address with the arrest warrant. Their effort to serve the warrant remained unsuccessful. Nevertheless, one of them noted on the jacket that although the "subject was not home," it was a "good address."
 {¶ 15} On April 2, 2005 appellee Smith was arrested in the state of Mississippi on the outstanding warrant. On July 26, 2005, after his return to Ohio, he was arraigned on the charges in the instant case. Smith subsequently filed a motion to dismiss the indictment.
 {¶ 16} Smith based his motion upon the state's delay in arresting him on the charges, claiming his rights to a speedy trial and due process of law had been violated. The trial court held an oral hearing on his motion.
 {¶ 17} After hearing the testimony of McGraw, the court clerk's representative, and a sergeant from the Sheriff's Department, the trial court granted Smith's motion. The trial court indicated the state failed to sustain its burden to prove it exercised "due diligence" in bringing Smith to trial in a timely manner.
 {¶ 18} The state challenges the trial court's decision with the following assignment of error:
 {¶ 19} "The trial court erred in granting defendant's motion to dismiss."
 {¶ 20} The state essentially argues that the trial court's decision lacks a basis in the record; the state contends that Smith failed to demonstrate any violation of his rights to a speedy trial or due process of law that would justify the decision. Since the record demonstrates its contention is disingenuous, the state's argument is rejected.
 {¶ 21} In this case, Smith never was arrested on the charges until 2005; consequently, his statutory right to a speedy trial is not implicated. R.C. 2945.71. Nevertheless, Smith retained a right to a speedy trial as guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. This right is a method by which a citizen is protected from "the disruption of life caused by * * * the presence of unresolved criminal charges." State v. Smith,
Cuyahoga App. No. 81808, 2003-Ohio-3524, ¶ 8, citing UnitedStates v. MacDonald (1982), 456 U.S. 1.
 {¶ 22} In order to trigger an inquiry into whether his right to a speedy trial has been violated in the proceedings against him, "the defendant must demonstrate that the delay between his indictment and [his] trial was prejudicial." State v. Daniels,
Cuyahoga App. No. 82586, 2003-Ohio-6479, ¶ 27, citing State v.Triplett, 78 Ohio St.3d 566, 1997-Ohio-182. A delay of more than one year is presumptively prejudicial. State v. Triplett, supra at 568, citing Doggett v. United States (1992), 505 U.S. 647.
 {¶ 23} Since the record reflects a delay of nearly four years between the indictment and his arrest on the charges, Smith's motion to dismiss provided the trial court with the "triggering mechanism" contained in Barker v. Wingo (1972), 407 U.S. 514.State v. Smith, supra, at ¶ 11. The trial court thus was required to consider the length of the delay in conjunction with the other three factors, viz., the reason assigned by the state for the delay; the defendant's responsibility to assert his right to a speedy trial; and, finally, any prejudice to the defendant.Barker v. Wingo, at 530-32.
 {¶ 24} Despite the state's claim in its appellate brief to the contrary, nothing in the record reflects appellee Smith had notice of the criminal charges filed against him. He was not arrested on the date of the incident. Thus, his actions over the next five years and four months after that date were not a cause of the delay. State v. Osborn, Lorain App. No. 01CA007790, 2001-Ohio-1666.
 {¶ 25} Rather, the record demonstrates the state's omissions caused the delay. As recognized by the Ninth Appellate District in Osborn, "official negligence" may occupy a "middle ground" between "diligent" prosecution and "bad faith delay," it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.
 {¶ 26} Moreover, the trial court's determination that the state failed to prove due diligence is reviewed with "considerable deference." Id. The record reflects the trial court correctly interpreted the evidence presented in this case.
 {¶ 27} McGraw's testimony proved a lack of diligence occurred in his initial investigation of Smith in 2000 as the "named suspect," since he admitted he failed to check the obvious resource available to him at the Ohio Bureau of Motor Vehicles. His testimony also proved that after many months of letting the complaint against Smith sit idle, McGraw essentially proceeded to employ the indictment as a "fishing expedition."
 {¶ 28} McGraw stated he decided to focus his investigation of the incident upon Carmen Willis. He acknowledged he believed her statements to him in the summer of 2001 were untrustworthy. Nevertheless, he used her former association with Smith's brother as his only justification for seeking an indictment against her as Smith's co-defendant. Additionally, despite her untrustworthiness, McGraw used the address she provided, which happened to be next-door to her own, for Smith. McGraw admitted that although he had by that time obtained the Denison Avenue address for Smith, he never went to that address to see whether Smith lived there.
 {¶ 29} McGraw's lack of effort, along with the cursory attention given to the matter by the Sheriff's Department, in its turn, to discover appellee Smith's real address is made manifest by the papers which accompanied the capias order when it went to the Sheriff's Department. Someone located two earlier arrest records for Smith and included them in the jacket that contained the arrest warrant.
 {¶ 30} Indeed, the deputy sergeant testified he used the documents for purposes of identification of the correct "Edward Smith." According to the deputy sergeant, however, the single effort his office made to serve the arrest warrant was based solely upon the address listed in the current case file. No reason was given for a conclusion that although the arrest warrant could not be served, the address was "good." Furthermore, no additional attempts were made to pursue any follow-up of Smith's probable whereabouts based upon the address Smith himself most recently had provided to law enforcement authorities. A lack of "affirmative steps" to locate the defendant qualifies as "official negligence." State v. Osborn, supra.
 {¶ 31} The final two factors to consider are the defendant's assertion of the right to a speedy trial, and the potential prejudice to the defendant. A defendant has no duty to bring himself to trial. Barker v. Wingo, supra at 527. The record demonstrates Smith asserted his right in a timely fashion. Moreover, after over five years of delay, "impediment" to an effective defense to the charges was "obvious." Id. at 532.
 {¶ 32} From the record therefore, this court cannot find the trial court incorrectly granted Smith's motion to dismiss the indictment. State v. Osborn, supra; cf., State v. Smith,
supra; State v. Daniels, supra.
 {¶ 33} The state's assignment of error, accordingly, is overruled.
 {¶ 34} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J. and Corrigan, J. concur.