JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Darnell Pate, appeals his convictions and sentences for rape, kidnapping, and gross sexual imposition. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On November 30, 2005, the Cuyahoga County Grand Jury returned a five-count indictment against appellant, charging him with two counts of rape, two counts of kidnapping, and one count of gross sexual imposition. On January 13, 2006, appellant was arrested and remained in jail until July 20, 2006. On May 8, 2006, appellant filed a pro se motion to dismiss for violation of his speedy trial rights.[1]
 {¶ 3} Appellant waived his right to a jury trial, and on March 6, 2007, a bench trial commenced. The trial court found the following: not guilty on Counts one and three, rape and kidnapping stemming from events which occurred in May 2004; guilty on Count two, rape, in violation of R.C. 2907.02(A)(2), a first degree felony; guilty on Count four, kidnapping, in violation of R.C. 2905.01(A)(2), a first degree felony with a sexual motivation specification; and guilty on Count five, gross sexual imposition, in violation of R.C. 2907.05(A)(1), a fourth degree felony. Appellant was sentenced to ten years on the rape charge, ten years on the kidnapping charge, and eighteen months on the gross sexual imposition charge, all to run concurrently. *Page 4 
During the sentencing hearing, the trial court determined that appellant was not a sexual predator.
 {¶ 4} At trial, the state called seven witnesses, including the 13-year-old female victim, her mother, her brother, her paternal grandfather, a forensics expert, the assigned social worker, and the detective who investigated the case.
 {¶ 5} The following relevant facts were adduced at trial. Sometime prior to July 2005, the family, including appellant, moved to a house on East 76th Street in Cleveland. The victim testified that on the afternoon of July 2, 2005, she was alone in the house with appellant when he asked her to "wrestle" and to pick a room in which to do it. She had seen appellant wrestle with her brothers before and thought he was being playful. The victim testified she went with appellant to her mother's room and began to wrestle with him on the floor. He began kissing her neck and breasts, then he got up and shut the windows and locked the doors to the house. The victim testified she ran upstairs to her brother's bedroom, and appellant followed her.
 {¶ 6} The victim further testified that while she was in the upstairs bedroom, appellant demanded that she take off her clothes and, out of fear, she did what he said. Appellant removed his pants, held his penis, and then inserted it into her vagina. The doorbell rang, and appellant got up and went downstairs. The victim testified that she noticed white, "slimy stuff" on and near her vagina and between her *Page 5 
legs, so she shut herself in the bathroom by securing the bathroom door with an extension cord, then proceeded to take a bath.
 {¶ 7} The victim then testified that appellant returned upstairs to tell her that no one was at the door, and then he went back downstairs. She bathed, changed into clean clothes and, because she was afraid to stay in the house with appellant, she went to a neighbor's house until her mother returned home.
 {¶ 8} The victim testified that on July 3, she told her mother what appellant had done to her, stating that he had "humped her." Her mother confronted appellant, who denied everything. The victim testified that her mother took her to the hospital to determine if she had been sexually active. Neither the victim nor her mother told the staff at the hospital of the alleged rape. The victim testified that later that afternoon, she sent a text message to her father stating that appellant had sexually assaulted her.
 {¶ 9} The victim further testified that on July 4, four policemen arrived at her home to question her about the alleged assault, but she did not tell them what happened because she was afraid she had done something wrong. Also on that date, Deborah Crawford, a social worker, arrived at her home. The victim testified that she told Crawford that appellant had raped her. After her interview with Crawford, the victim went with her mother back to the hospital and completed a rape kit. *Page 6 
 {¶ 10} The victim's mother testified that on July 3rd, her daughter told her that appellant had "humped her." She confronted him, and he denied he had touched the victim. When appellant refused to go to the hospital with her and her daughter, she ordered him to leave the house.
 {¶ 11} The mother further testified that, on their first visit to the hospital, she asked the staff to check her daughter to determine if she had been sexually active, but they refused to do this type of examination. She also testified that neither she nor her daughter told the hospital staff of any sexual abuse. She further testified that on July 4th, four policemen arrived at their home to question her daughter, but that her daughter refused to tell them what appellant had done to her.
 {¶ 12} Deborah Crawford testified that the victim told her that appellant had raped her. She testified she instructed the victim to gather the clothing she had been wearing at the time of the incident and go to the hospital to have a rape kit performed. Crawford testified that the victim told her that appellant had tried to rape her in May 2004, when the family was living on Manor Road.
 {¶ 13} Christopher Smith, the state's forensics expert, testified that he evaluated the rape kit performed on the victim. The results of the tests indicated that one sperm cell was detected in the vaginal swab, but no other trace of saliva, blood, or semen was found in the samples or on the victim's underwear. *Page 7 
 {¶ 14} At the close of the state's case, defense counsel made a Crim. R. 29 motion, which the court denied. The defense did not present a case, but renewed its Crim. R. 29 motion. The court denied the motion.
 Review and Analysis {¶ 15} Appellant filed a timely notice of appeal. He raises five assignments of error for our review.
 Sufficiency and Manifest Weight of the Evidence {¶ 16} Because appellant's first two assignments of error relate to the evidence adduced at trial, we address them together.
 {¶ 17} "I. The State failed to present sufficient evidence to sustain appellant's convictions.
 {¶ 18} "II. The appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} Appellant argues that the state failed to present evidence of the element of force on the charges of rape and gross sexual imposition; and evidence of force, threat, or deception on the charge of kidnapping. He also argues that the verdicts were against the manifest weight of the evidence on all three charges.
 {¶ 20} Whether the evidence is legally sufficient to sustain a verdict is a *Page 8 
question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,102 S.Ct. 2211, 72 L.Ed.2d 652. Sufficiency is a test of adequacy. State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 21} On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 22} Sufficiency of the evidence is subject to a different standard of review than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v.Cleveland (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.
 {¶ 23} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held inTibbs, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence.
 {¶ 24} The Martin court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 25} Appellant was convicted of rape and gross sexual imposition, in violation of R.C. 2907.02(A)(2)[2] and R.C. 2907.05(A)(1),[3]
respectively. An essential element *Page 10 
of these charges is a show of "force or threat of force." The state presented the victim's testimony to show that she was forced to submit to appellant's demands. She testified that she took off her clothes because she was afraid of him. She testified that when appellant got up to lock the doors and shut the windows, she ran from him. The victim was 13 years old; appellant was a 25-year-old man and her mother's boyfriend at the time. Despite the victim's testimony that she did not consider appellant a father figure or a disciplinarian, there was no testimony that she considered him her peer or her equal.
 {¶ 26} Viewed in a light most favorable to the prosecution, the state produced sufficient evidence on both charges that the victim was forced to submit to sexual conduct with appellant.
 {¶ 27} Appellant also argues that the verdicts were against the manifest weight of the evidence. He contends that there was "a complete lack of physical
 {¶ 28} evidence" and suggests that the sexual act between him and the girl, if it occurred at all, was consensual. He also argues that the victim's failure to report the incident immediately to her mother or to the police makes her testimony so inconsistent that any conviction is against the manifest weight of the evidence. We disagree.
 {¶ 29} Smith testified that at least one sperm head was found in the vaginal swab taken from the victim. No other explanation was given for this positive result *Page 11 
for sexual contact. Also, the court heard all the evidence, including alleged inconsistencies in the victim's testimony. Appellant argues that the victim's explanation of the events, including such descriptions as "he messed with me," "he humped me," and "he raped me," renders her testimony unreliable. We do not find that appellant's argument supports reversal by this court. These terms are not so unusual or unprecedented when used to describe sexual contact, and we defer to the trial court's ability to weigh the evidence and the credibility of the witnesses to reach its verdict.
 {¶ 30} Furthermore, we are not persuaded by appellant's argument that the victim was lying simply because she was unable to tell the police what allegedly happened. She testified that she was afraid she had done something wrong, a common response from children who experience abuse. She was also confronted, unannounced, by four male police officers at her front door. The testimony from the victim and the female social worker, whose job it is to deal with cases of abuse, were consistent with the story the victim told her mother the day before the police arrived at her house. We do not find that the trial court lost its way in reaching guilty verdicts on the charges of rape and gross sexual imposition.
 {¶ 31} With respect to the charge of kidnapping, appellant argues that the state failed to present evidence of "force, threat or deception"[4] sufficient to allow the trial court to return a guilty verdict on Count four. We disagree. *Page 2 
 {¶ 32} The state must only present evidence on one of the three elements: force, threat, or deception. Here, the state produced evidence that appellant deceived the victim by suggesting that they "wrestle," not that they have sexual intercourse. In addition, "[f]orce need not be overt and physically brutal, but can be subtle and psychological."State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304.
 {¶ 33} The victim testified that she was afraid of appellant; therefore, she took off her clothes when he demanded it. She testified that she felt threatened by him and so she acquiesced. See State v.Fowler (1985), 27 Ohio App.3d 149, 500 N.E.2d 390 (stepfather convicted of raping his 14-year-old stepdaughter where court found defendant held a position of authority over her that did not require any explicit threats or displays of force).
 {¶ 34} We also find that the state produced sufficient evidence that appellant "restrained [the victim's] liberty." The testimony of the victim showed that appellant locked the doors and shut the windows, and then followed her upstairs, at which time he got on top of her for the purpose of engaging in sexual activity. The lower court did not err when it denied appellant's Crim. R. 29 motions. *Page 13 
 {¶ 35} We also find that the court's verdict was not against the manifest weight of the evidence. The court heard the victim's testimony and found it credible. She testified that she thought appellant wanted to wrestle with her, the way he sometimes did with her brothers. She testified that she ran away from appellant when he got up to lock the doors and windows. She testified that she did what appellant told her to do because she was afraid of him.[5] Finally, she testified that she attempted to "lock" herself in the bathroom using an extension cord as soon as appellant went downstairs to answer the door.
 {¶ 36} We do not believe that the court lost its way in reaching a guilty verdict on the charge of kidnapping. Clearly, the court found the victim's testimony credible as it related to appellant's forcible restraint on her liberty.
 {¶ 37} We find that the state presented sufficient evidence on the charges of rape, kidnapping, and gross sexual imposition to support appellant's convictions, and it properly denied appellant's Crim. R. 29 motions. We also find that the court did not lose its way in returning guilty verdicts on the three charges; therefore, we overrule appellant's first and second assignments of error.
 Speedy Trial {¶ 38} "III. The trial court erred when it denied appellant his right to a speedy trial."
 {¶ 39} In his third assignment of error, appellant argues that the court erred by not dismissing his case on the basis of a speedy trial violation. Appellant filed a pro se motion to dismiss on May 8, 2006, claiming that the time the state had in which to bring him to trial had expired under R.C. 2945.71. We disagree.
 {¶ 40} The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial by the state.State v. O'Brien (1987), 34 Ohio St.3d 7, 516 N.E.2d 218. In Barker v.Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court declared that, with regard to fixing a time frame for speedy trials, "[t]he States * * * are free to prescribe a reasonable period consistent with constitutional standards * * *." To that end, the Ohio General Assembly enacted R.C. 2945.71[6] in order to comply with the Barker decision. See, also, State v. Lewis (1990),70 Ohio App.3d 624, 591 N.E.2d 854. *Page 15 
 {¶ 41} It is well established that the Ohio speedy trial statute constitutes a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or misdemeanor and shall be strictly enforced by the courts of this state. State v. Pachay (1980), 64 Ohio St.2d 218, 416 N.E.2d 589.
 {¶ 42} Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. State v. Howard (1992),79 Ohio App.3d 705, 607 N.E.2d 1121. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. State v. Geraldo (1983), 13 Ohio App.3d 27,468 N.E.2d 328.
 {¶ 43} We agree with the state that, pursuant to R.C. 2945.71, the statutory limit had not expired. This determination is based on a calculation of the days from appellant's arrest on January 13, 2006, to his trial on March 7, 2007, including time tolled for the numerous continuances he requested. The docket reflects approximately 16 continuances for the purpose of discovery, change in counsel, and pretrial and trial date changes. "The time [in which the state must bring a defendant to trial] may be tolled by certain events delineated in R.C. 2945.72(E) and (H), including continuances granted as a result of defense motions and any reasonable continuance granted other than upon the request of the accused." State v. Taylor, 98 Ohio St.3d 27,2002-Ohio-7017, 781 N.E.2d 72. Additionally, appellant's motion *Page 16 
to dismiss, as well as his failure to respond to the state's discovery request, toll the time against him.
 {¶ 44} If the court charges these numerous requests for continuances to appellant, the state was well within its 270-day limit in bringing him to trial; however, a defendant may successfully challenge a violation of his speedy trial rights on constitutional grounds. InBarker, supra, the United States Supreme Court established certain factors which, when analyzed, aid the court in determining whether there has been a constitutional violation of a defendant's speedy trial rights. These four factors are the length of delay, the reason for the delay, the assertion by the defendant of his right, and the amount of prejudice to the defendant. Id.
 {¶ 45} The first factor, the length of the delay, is a "`triggering mechanism,' determining the necessity of inquiry into the other factors. * * * [O]ne year is generally considered enough." State v. Triplett,78 Ohio St.3d 566, 1997-Ohio-182, 679 N.E.2d 290. In this case, a delay of 416 days between arrest and trial is sufficient to trigger an inquiry into the remaining factors[7] in Barker.
 {¶ 46} We find that it is both the second and fourth factors that cut against appellant. A review of the docket shows that the reason for the lengthy delay until trial was a result of appellant's own actions. He made numerous requests for continuances of pretrial and trial dates; he changed attorneys at least twice; and he *Page 17 
failed to respond to the state's discovery requests. What is particularly notable in this case is that even after appellant moved to dismiss his case for a speedy trial violation on May 8, 2006, he continued to request continuances of his trial date. He cannot now complain that the state or the court below failed to preserve his constitutional rights under the Sixth and Fourteenth Amendments.
 {¶ 47} Finally, we reject appellant's argument that the 20-month delay between the alleged crime and the trial caused him prejudice. The only eyewitness to the alleged crimes, with the exception of appellant himself, was the victim. The rape kit results were documented within two days of the alleged sexual abuse. The testimony of the social worker and the police detective was bolstered by the notes each took during their interviews with the victim.
 {¶ 48} We find that the court did not err in failing to grant appellant's motion to dismiss for speedy trial violation; therefore, we overrule appellant's third assignment of error.
 Sentencing {¶ 49} "IV. The court's imposition of appellant's sentences is not supported by the record, accordingly, the sentence is contrary to law and violates appellant's right to due process under the Fifth andFourteenth Amendments to the United Stated Constitution and Section 16
of Article I of the Ohio Constitution."
 {¶ 50} In his fourth assignment of error, appellant argues that his sentence was contrary to law because the court sentenced him to the maximum penalty. *Page 18 
Specifically, he argues that he "never exercised abuse, cruelty, he never threatened [the victim] * * *, and he never injured her or left traceable marks on her body * * *." (See appellants' brief, page 16.) We are not persuaded by these assertions in light of appellant's rape and kidnapping convictions.
 {¶ 51} R.C. 2953.08(A)(4) states: "(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds: * * * (4) The sentence is contrary to law."
 {¶ 52} R.C. 2953.08(G) states: "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 53} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (D)(2)(e) or (E)(4) of section 2929.14, or division (H) of section 2929.20 of the *Page 19 
Revised Code, whichever, if any, is relevant; (b) That the sentence is otherwise contrary to law."
 {¶ 54} After the Ohio Supreme Court's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, a trial court is not required to provide its reasons for imposing the maximum sentence provided it falls within the statutory range. The court is only required to consider the applicable felony sentencing statutes that delineate the purposes of sentencing and factors that demonstrate the seriousness of the crime and the likelihood of recidivism. State v. Polick (1995),101 Ohio App.3d 428, 655 N.E.2d 820.
 {¶ 55} Appellant was convicted of rape, kidnapping, and gross sexual imposition of a 13-year-old girl. The victim was the daughter of appellant's girlfriend and, at the very least, she was entitled to trust appellant as an adult member of her household. While he may not have left external physical scars on the victim, the victim's own testimony supports a finding that she was afraid of appellant and only acquiesced to his demands out of fear.
 {¶ 56} During sentencing, the court stated on the record that it had considered the purposes and principles of sentencing, as required by the sentencing statutes. Furthermore, the sentence imposed by the court was within the statutory range; therefore, we overrule appellant's fourth assignment of error.
 Allied Offenses *Page 20 {¶ 57} "V. The trial court erred in finding that the charges of rape and kidnapping were separate offenses."
 {¶ 58} In his fifth assignment of error, appellant argues that his rape and kidnapping convictions are allied offenses of similar import; therefore, the court erred in imposing multiple sentences for the two offenses.
 {¶ 59} R.C. 2941.25 states: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 60} "The applicable test for deciding that issue is as follows: If the elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.' If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. R.C. 2941.25(B)." (Internal citations omitted.) State v. Rance, 85 Ohio St.3d 632,1999-Ohio-291, 710 N.E.2d 699. *Page 21 
 {¶ 61} "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines: `(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions; (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.'" State v. Lipscomb, Cuyahoga App. No. 88831,2007-Ohio-5945.
 {¶ 62} Appellant argues that his conviction for kidnapping cannot stand because it was allied with the rape offense. We do not agree. The victim's testimony at trial supports a finding that appellant kidnapped and raped her. Appellant deceived the victim by telling her that he wanted to wrestle with her. He also shut the doors and locked the windows of the room in which he initiated sexual conduct with the victim. This is a separate act rather than just restraining her liberty incidental to the actual rape. *Page 22 
 {¶ 63} Furthermore, the victim indicated through her testimony that she was initially shut in her mother's room with appellant; then he followed her up to her brother's room; and, finally, she "locked" herself in the bathroom to get away from him. She testified that she was only able to leave the house after appellant had gone downstairs. From this evidence, the trial court could find that the victim was restrained for a prolonged period of time. Also, appellant's restraint of the victim was secretive since he was alone in the house with her, and he had shut and locked the windows and doors.
 {¶ 64} We find that the court did not err when it found appellant guilty of the separate crimes of kidnapping and rape; therefore, we overrule appellant's fifth assignment of error and affirm the kidnapping conviction.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR.
[1] Although the docket does not reflect the court's ruling on appellant's motion, it can be presumed that the motion was denied. SeeState ex rel. V. Cos. v. Marshall, 81 Ohio St.3d 467, 1998-Ohio-329,692 N.E.2d 198 (when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it).
[2] R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
[3] R.C. 2907.05(A) states: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
[4] R.C. 2905.01(A): "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (2) To facilitate the commission of any felony or flight thereafter; * * *."
[5] Appellant's reliance on the victim's testimony that she was not afraid of him is misleading. That testimony was specific to the time the victim was telling her mother what had occurred. The victim testified that she was afraid of appellant when the two of them were alone in the house on July 2.
[6] R.C. 2945.71 states in pertinent part: "(C) A person against whom a charge of felony is pending: (1) Notwithstanding any provisions to the contrary in Criminal Rule 5(B), shall be accorded a preliminary hearing within fifteen consecutive days after his arrest if the accused is not held in jail in lieu of bail on the pending charge or within ten consecutive days after his arrest if the accused is held in jail in lieu of bail on the pending charge; (2) Shall be brought to trial within two hundred seventy days after his arrest. * * * (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."
[7] Appellant filed a pro se motion to dismiss for violation of his speedy trial rights, thereby meeting the third factor underBarker. *Page 1