DECISION.
{¶ 1} Defendant-appellant Edwin R. Millikin appeals his conviction for aggravated menacing,[1] which stemmed from an incident in which he approached police officers while carrying a shotgun and having a handgun tucked in the waist of his pants. He was also convicted of disorderly conduct. We affirm. Coming to the door armed with a shotgun and a handgun to have a discussion with police officers can certainly be construed as menacing. And we note that alcohol and gunpowder should not be mixed. Millikin was fortunate to have only misdemeanor convictions — he could well have been shot.
 I. A Barricaded Road {¶ 2} During road construction on Trapp Lane in Springdale, Ohio, barricades were placed in the road indicating that it was closed to through traffic. The barricades were in front of Millikin's house. Despite the signs, people would apparently move the barricades and drive around them. Annoyed by this, Millikin parked his car and another person's car in the street so that traffic could not flow either way.
 {¶ 3} At about 8:20 on the evening of April 19, 2003, Springfield Township police officer Tom Prichard responded to a complaint by motorists affected by Millikin's improvised barricade. Officer Prichard approached Millikin's house, where Millikin and several family members and friends were sitting on the front sidewalk. Officer Prichard noticed that several of the people were drinking alcoholic beverages and that Millikin smelled of alcohol. After ascertaining that the vehicles blocking the street belonged to Millikin and his friend, Officer Prichard told Millikin that he needed to move the cars off the street.
 {¶ 4} At that point, Millikin became upset. He raised his voice and told Officer Prichard that he felt the police were not doing their job by not enforcing the road barricade. Officer Prichard stated that he allowed Millikin to vent his anger, but the officer told him that it was not Millikin's responsibility to enforce the closing of the road. Prichard told him that he would address the issue with the traffic-safety division, but that he could not guarantee that the situation would be addressed that evening. Both cars were moved off the street, and Officer Prichard left.
 II. To the Barricades Again {¶ 5} The police were called again at about 10:00 p.m., but they did not respond. At 11:15 p.m., the police were called for a third time. Officer Prichard responded, along with the explorer riding with him. The explorer was a young person interested in pursuing law enforcement through a program affiliated with the Boy Scouts. In addition, Officer Prichard's supervisor, Sergeant Rick Bley, responded to the call.
 {¶ 6} When they arrived, Officer Prichard saw that the same two vehicles were again parked in the street and blocking traffic. Officer Prichard approached the group of people in Millikin's front yard and asked if Millikin was still at home, and a woman went inside to get him. Millikin came to the front door wearing only a towel wrapped around the lower half of his body.
 {¶ 7} Both Officer Prichard and Sergeant Bley testified that Millikin was very angry. Bley stated that Millikin stood inside the screen door and was "pointing at me and getting irritated, saying he paid our salary, we weren't doing anything, we worked for him." Sergeant Bley told Millikin that if he wanted to come out and talk to the officers, he needed to put some clothes on. Millikin turned around and headed inside the house.
 {¶ 8} For the next five minutes or so, Sergeant Bley and Officer Prichard turned their attention to the people in front of the house. They were discussing the situation and trying to find someone sober enough to move the cars blocking the street, when the explorer yelled, "He's got a gun." The officers turned to see Millikin standing at the front door, holding a shotgun in his hand He was also wearing pants and had a handgun tucked at his waist.
 {¶ 9} Both Prichard and Bley immediately drew their weapons and commanded Millikin to put the shotgun down. Millikin followed their orders, eventually putting the gun down and dropping to his knees.
 {¶ 10} Officer Prichard testified that he felt that Millikin's intent was to harm them. He testified, "You can shoot somebody, you can hit somebody with a weapon. I wasn't sure how he was gonna use it. I just felt that was his intent, that he was in some way going to use the weapon to harm us."
 {¶ 11} Sergeant Bley testified that he was concerned that Millikin was coming after the police officers. He testified, "[T]he first thing going through my head was I knew he was very irritated and angry at us, just from the first contact I made with him. So as I immediately took cover, I think the first thing going through my head was, if he comes out of that — comes out the door, still coming at us with a shotgun, that I was going to have to kill him before he hurt anyone else."
 III. The Charges {¶ 12} Millikin was charged with aggravated menacing, a first-degree misdemeanor, and disorderly conduct, a fourth-degree misdemeanor.[2] The jury found Millikin guilty of aggravated menacing and disorderly conduct, but did not find that Millikin had persisted in disorderly conduct after reasonable warning or request to desist. Therefore, his conviction for disorderly conduct was only a minor misdemeanor.
 {¶ 13} For his aggravated-menacing conviction, the trial court sentenced Millikin to 180 days of home incarceration, with 150 days suspended, along with a fine and one year of probation. For the disorderly-conduct conviction, Millikin received a fine.
 {¶ 14} In his one assignment of error, Millikin argues that the trial court erred when it overruled his Crim.R. 29 motion for acquittal at the close of the state's presentation of evidence. Specifically, Millikin contends that there was insufficient evidence to support his conviction for aggravated menacing.
 {¶ 15} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented.[3] The relevant inquiry in a claim of insufficiency is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proved beyond a reasonable doubt.[4]
 {¶ 16} The aggravated-menacing statute states, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *."[5]
 {¶ 17} The state presented evidence that Millikin, while angry and intoxicated, appeared at the front door of his house carrying a shotgun and having a handgun tucked in the waist of his pants.
 {¶ 18} Millikin argues that his behavior, without pointing the firearms or verbally threatening the officers, was not enough to constitute aggravated menacing. To support his argument, Millikin cites State v. Fields, a case in which the Twelfth Appellate District reversed a conviction for aggravated menacing when the defendant had not verbally threatened or pointed her gun directly at the victims.[6]
 {¶ 19} In Fields, the defendant was an off-duty police officer who had ejected several boys from property where they were illegally fishing.[7] Although the defendant initially waved her gun around, she held the gun at her side thereafter, including the time she was with the boys.[8] One of the boys testified that the defendant was "pretty nice" to him for most of the encounter. Given those facts, the court concluded that the defendant's actions were not threatening. In addition, the court noted that the property in question had been previously vandalized and that there had been other trespassers, thereby making the defendant's response to the situation more reasonable.[9]
 {¶ 20} The state counters that the facts in Fields are distinguishable and argues that the facts in Millikin's case are more similar to those in State v. Welling.[10] InWelling, the victim said "hi" to his ex-girlfriend while she was with the defendant, her current boyfriend. When the defendant looked at the victim as he walked by, the victim asked him what he was staring at. The defendant then went back to his truck and removed a gun. He showed it to the victim, placed it in his waistline, and pulled his shirt down over it.[11]
 {¶ 21} The Fifth Appellate District affirmed the defendant's conviction for aggravated menacing. The court distinguishedFields by noting that the defendant was not a police officer and, therefore, lacked the justification for carrying a gun. The court also concluded that the confrontation between the defendant and the victim was not "pretty nice," and that the defendant's actions were clearly meant to intimidate and frighten the victim.
 {¶ 22} We agree with the state that the facts of this case are distinguishable from Fields, and that they more closely align with those of Welling. Millikin was not a police officer investigating a possible criminal act. And the interaction between Millikin and the police officers was not "pretty nice." Millikin had had angry confrontations with both Officer Prichard and Sergeant Bley. Then, similar to the defendant in Welling,
after a confrontation, Millikin went and retrieved two guns, carrying one and tucking the other in his pants.
 {¶ 23} Even though Millikin never pointed a gun at the police officers and did not verbally threaten them, in the entire context of the evening, it was reasonable to conclude that the police officers felt threatened and were fearful that Millikin would attempt to cause serious physical harm to them. We hold that a rational trier of fact could have found that the state had proved beyond a reasonable doubt that Millikin committed aggravated menacing.
 {¶ 24} We overrule Millikin's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J., Concur.
[1] R.C. 2903.21(A).
[2] R.C. 2917.11(B)(1).
[3] See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[4] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[5] R.C. 2903.21(A).
[6] State v. Fields (1992), 84 Ohio App.3d 423,616 N.E.2d 1185.
[7] Id. at 425.
[8] Id. at 428.
[9] Id.
[10] State v. Welling (Feb. 26, 2001), 5th Dist. No. 2000CA00258.
[11] Id.