JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Matthew Ruzicka, appeals his conviction from the Berea Municipal Court after a jury trial. Finding no error in the proceedings below, we affirm.
 {¶ 2} In the early morning hours of December 12, 2004, Ruzicka allegedly threatened two officers from the Brook Park Police Department with a loaded firearm. He was arrested for felonious assault. The case was bound over to the grand jury. On January 28, 2005, the Cuyahoga County Grand Jury returned a "no bill" as to these charges.
 {¶ 3} On June 20, 2005, the city of Brook Park issued a complaint stemming from the December 12, 2004 incident, charging Ruzicka with two counts of aggravated menacing in violation of R.C. 2903.21. On June 21, 2005, a summons was mailed by the Berea Municipal Court via certified mail to Ruzicka's address. It was returned unclaimed. On June 27, 2005, Ruzicka failed to appear at his arraignment, and a capias was issued for his arrest.
 {¶ 4} On May 15, 2006, Ruzicka surrendered himself to the Berea Municipal Court and posted a cash bond. His arraignment was scheduled for the next day. An attorney for Ruzicka entered a plea of not guilty, which included a speedy trial waiver, by way of a facsimile letter to the court.
 {¶ 5} On September 12, 2006, a jury trial ensued. The evidence revealed that on December 11, 2004, Ruzicka hosted a party at his home, which several family members attended. After several hours of drinking and dancing, a fight *Page 2 
ensued between Ruzicka and two of his brothers-in-law. Ruzicka was dragged outside and assaulted by the two. Also, during the altercation another family member was injured. Ruzicka was able to get back into his house. Thereafter, the party broke up, and everyone went home.
 {¶ 6} The Brook Park police were dispatched to investigate the circumstances of the altercation. Officers Lally and Kovcheck arrived at Ruzicka's home and knocked on the door, announcing "Brook Park police." Ruzicka answered the door with a gun. Both officers testified that Ruzicka pointed the gun at them. Ruzicka was told to put the gun down and come outside. Ruzicka did as he was told and was arrested.
 {¶ 7} Ruzicka was found guilty of two counts of aggravated menacing and sentenced to a total of 30 days in jail, a $500 fine, and one year of probation. His sentence was stayed pending this appeal.
 {¶ 8} Ruzicka advances two assignments of error for our review. In his first assignment of error, Ruzicka argues that his conviction for aggravated menacing is against the manifest weight of the evidence. Specifically, Ruzicka argues that neither officer believed Ruzicka would cause serious physical harm to them and that the gun was never pointed at either officer. In addition, Ruzicka asserts that the officers' testimony was not credible.
 {¶ 9} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury *Page 3 
could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Leonard, 104 Ohio St.3d 54, 68, 2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 10} Ruzicka was charged with two counts of aggravated menacing in violation of R.C. 2903.21, which states the following:
 "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 11} In State v. Burchett, Montgomery App. No. 20166,2004-Ohio-3095, police responded to an anonymous call reporting drug activity at an apartment. The police knocked but did not identify themselves as police. The defendant opened the door slowly, and pointed a handgun out the door before he looked through the opening. When the defendant realized it was the police, he pulled the gun back in the apartment and placed on the floor. The police entered and the defendant and two others were handcuffed. The appellate court found that the "act of pointing a firearm out the door may not have constituted felonious assault or assault on a police officer, [however the officers] * * * had probable cause to believe [the defendant] had committed the crime of aggravated menacing." The court also noted *Page 4 
that even if the defendant did not actually intend to inflict serious physical harm on the officer or even to place the officer in fear of serious physical harm, the officer still had probable cause to believe the defendant had committed the crime of aggravated menacing. The court stated "[e]ven if his motive was purely defensive, * * *, the fact remains that he pointed a gun out the door in the direction of whoever was outside."
 {¶ 12} In State v. Terzo, Butler App. No. CA2002-08-194,2003-Ohio-5983, a Fairfield police officer responded to a report that a female was brandishing a firearm and trying to set fire to clothing she had thrown in the street. When the officer arrived, he observed the female sitting on the front porch holding a shotgun. The officer testified that the female raised the shotgun and aimed it at the officer. He testified that he drew his service revolver, fearing that the female intended to shoot. The female went back inside the house, put the gun down, and surrendered herself immediately. The appellate court upheld Terzo's conviction for aggravated menacing, stating that "The threat need not be verbalized; rather, the threat can be implied by the offender's actions. City of Niles v. Holloway (Oct. 3, 1997), Trumbull App. No. 96-T-5533, 1997 Ohio App. LEXIS 4517, citing State v.Hoaglin (Mar. 25, 1993), Van Wert App. No. 15-92-15, 1993 Ohio App. LEXIS 1718. And finally, while appellant [Terzo] also argues that she would have been unable to carry out the threat because the gun was not loaded, neither the intent nor the ability to carry out the threat is an element of the offense. Dayton v. Dunnigan (1995), *Page 5 103 Ohio App.3d 67, 658 N.E.2d 806." Finally, in State v. Millikin, Hamilton App. No. C-030825, C-030826, 2004-Ohio-4507, the defendant was angry that motorists would move and drive around the barricades placed in front of his home because of road construction. The defendant parked his and another person's vehicles in front of his house, blocking the street. The police were called, and the defendant was told to move the vehicles. The defendant was angry that the police were not enforcing the closing of the road. The state presented evidence that when the police arrived for the second time, the defendant appeared at the front door of his house, angry and intoxicated, carrying a shotgun and having a handgun tucked in the waistband of his pants. The appellate court upheld the defendant's conviction for aggravated menacing, stating that "Even though Millikin never pointed a gun at the police officers and did not verbally threaten them, in the entire context of the evening, it was reasonable to conclude that the police officers felt threatened and were fearful that Millikin would attempt to cause serious physical harm to them."
 {¶ 13} In this case, both officers testified that they approached Ruzicka's door, knocked, and announced "Brook Park police." Both officers testified Ruzicka opened the door and pointed a gun at the officers. Officer Kovcheck yelled "Gun!" and the officers separated to seek cover and call for backup. Officer Lally ordered Ruzicka to "drop the weapon" and stated "let me see your hands." One officer was asked, "Did you believe that you were in imminent, serious physical harm at that point?" He responded, "Yes, sir. * * * When somebody points a gun at you, they *Page 6 
mean to shoot you. You don't point a gun at somebody unless that's what you intend to do."
 {¶ 14} The Supreme Court of Ohio in State v. Brooks (1989),44 Ohio St.3d 185 held that "The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2). [Nevertheless,] the pointing of a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of `aggravated menacing' as defined by R.C. 2903.21." The act of pointing a deadly weapon at another is essentially an unequivocal act demonstrating the accused's intent to cause physical harm to another by use of that weapon. Id.
 {¶ 15} The city presented credible evidence that Ruzicka pointed a gun at the officers, which is an unequivocal act, proving Ruzicka's intent. Further, there was testimony that the officers took the threat of harm seriously. Although the grand jury did not indict Ruzicka for felonious assault, Ruzicka's conviction for aggravated menacing is not against the manifest weight of the evidence. Accordingly, Ruzicka's first assignment of error is overruled.
 {¶ 16} In his second assignment of error, Ruzicka argues that his trial counsel was ineffective for failing to file a motion to dismiss for speedy trial violation.
 {¶ 17} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel *Page 7 
was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v.Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. State v.Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 18} "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980), 69 Ohio App.2d 91, 95.
 {¶ 19} Ruzicka alleges that his first attorney filed a written waiver of speedy trial, without Ruzicka's consent. Ruzicka concedes that he was brought to trial well before the statutory requirement if his waiver of speedy trial was valid. Nevertheless, he argues that his waiver was not valid.
 {¶ 20} It is well settled that an accused may waive his constitutional right to a speedy trial provided that such a waiver is knowingly and voluntarily made. State v. King (1994), 70 Ohio St.3d 158, citingBarker v. Wingo (1972), 407 U.S. 514, 529. Consistent with this principle, the Supreme Court of Ohio has found the statutory speedy trial provisions set forth in R.C. 2945.71 to be coextensive with constitutional speedy trial provisions. Id., citing State v.O'Brien (1987), 34 Ohio St.3d 7. The *Page 8 
Supreme Court of Ohio has held that an accused's express written waiver of his statutory rights to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions. Id., citingO'Brien, supra, paragraph one of the syllabus.
 {¶ 21} The Supreme Court of Ohio has held that, for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel. Id., citing State v. McBreen (1978), 54 Ohio St.2d 315, syllabus. "[T]o be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." State v. King,70 Ohio St.3d 158, 1994-Ohio-412.
 {¶ 22} Here, the lower court file contains a facsimile letter dated May 15, 2006 from Ruzicka's attorney, wherein Ruzicka pleads "Not Guilty" and waives his right to speedy trial. This letter was file stamped and recorded in the case jacket. Finally, there is no evidence in the record to suggest that Ruzicka's attorney wrongfully waived Ruzicka's right to speedy trial.
 {¶ 23} Ruzicka also argues that his delay before trial was uncommonly long, and thus violated his right to speedy trial. Specifically, Ruzicka argues that there was nearly a year between the complaint and his arraignment and that he suffered prejudice as a result. In Barker v.Wingo (1972), 407 U.S. 514, the United States Supreme Court set forth a four-part test to determine whether the state has violated *Page 9 
an accused's right to a speedy trial. The four factors include (1) the length of the delay, (2) the reason the government assigns to justify the delay, (3) the defendant's responsibility to assert his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530-532.
 {¶ 24} The length of delay is a "triggering mechanism," determining the necessity of inquiry into the other factors. Id. at 530. The United States Supreme Court has noted that the first factor, the length of the delay, involves a dual inquiry. Doggett v. United States (1992),505 U.S. 647, 652, supra. First, a threshold determination is made as to whether the delay was "presumptively prejudicial," triggering theBarker inquiry. Next, the length of the delay is again considered and balanced against the other factors. State v. Smith, Cuyahoga App. No. 81808, 2003-Ohio-3524. One year is generally considered enough to trigger a review. State v. Triplett (1997), 78 Ohio St.3d 566, 568,1997-Ohio-182.
 {¶ 25} In this case, Ruzicka was arraigned ten months after the complaint was issued against him, but sixteen months after felony charges were dropped against him, and nearly eighteen months after the alleged incident. Certified mail was sent to Ruzicka's proper address, but it was returned unclaimed. Ruzicka missed his arraignment, and a warrant was issued for his arrest. We note that in Triplett, supra, the Ohio Supreme Court found that a 54-month delay, while significant, did not infringe on the defendant's liberty where the defendant contributed to the delay. The Court reasoned that the interests that the Sixth Amendment was designed to protect *Page 10 
— freedom from extended pretrial incarceration and from the disruption caused by unresolved charges — were not issues since the defendant was not incarcerated and was unaware of pending charges. We find the reasoning in Triplett applicable to the case at hand. The interests that the Sixth Amendment was designed to protect were not issues in this case since Ruzicka was not incarcerated and was unaware of the pending charges. Thus, Ruzicka's speedy trial rights were not violated, and his attorney was not ineffective when he did not file a motion to dismiss. Accordingly, Ruzicka's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
 CHRISTINE T. MCMONAGLE, J., and MARY J. BOYLE, J., CONCUR *Page 1