**[Cite as *State v. Tate*, 2016-Ohio-5622.]**

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103446**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KEITH TATE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593628-A

**BEFORE:**   Kilbane, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   September 1, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino Mancino & Mancino
75 Public Square Building
Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Carl Mazzone
Hannah Smith
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Keith Tate ("Tate"), appeals from his conviction for attempted murder, felonious assault, and having a weapon while under disability. Having reviewed the record and the controlling case law, we affirm.

**{¶2}** On February 27, 2015, Tate was charged in the Cuyahoga County Common Pleas Court with a four-count indictment in connection with the September 2013 shooting of Marcos DeJesus ("DeJesus"). Count 1 charged Tate with attempted murder, with one- and three-year firearm specifications. Counts 2 and 3 charged him with felonious assault, with one- and three-year firearm specifications. Count 4 charged him with having a weapon while under disability.

**{¶3}** On April 3, 2015, Tate moved to dismiss this case, contending that he was subjected to impermissible preindictment delay and was denied his right to a speedy trial because a complaint was filed against him in Cleveland Municipal Court on October 9, 2013, but there was no effort by the state to notify him or arrest him until February 2015. He also argued that the state failed to use due diligence to locate and charge him, even though his address was available in connection with a Lake County prosecution and a 2014 conviction in the Cuyahoga County Common Pleas Court for drug possession. The trial court denied the motion on April 30, 2015.

{¶4} Then on May 11, 2015, Tate filed a motion to suppress the identification procedure. The trial court held a hearing on this motion on July 8, 2015. The following evidence was adduced at the hearing.

{¶5} Cleveland Police Detective Robbie Durbin ("Detective Durbin") testified that he met with DeJesus at the hospital on October 9, 2013, after DeJesus was taken off of a ventilator and able to speak. DeJesus told Detective Durbin that his assailant was Tate. Detective Durbin used the Cleveland Police booking website to prepare a six-photo array containing Tate's photo. Detective Durbin had his supervisor fax him the forms required for blind administration of the array. This form was attached to the array and instructs the witness that the suspect may or may not be in the array, that administrator does not know if the suspect is in the array, and that there could be differences between the photo and the suspect's actual appearance. The form also instructs that the witness should take his or her time and look through the photos for the person that he or she recognizes. Detective Durbin testified that he is not in the room when the administrator presents the array. The administrator notes the victim's selection and the victim's degree of certainty, and verifies that the instructions on the form were followed.

{¶6} Detective Durbin further testified that the blind administrator who presented the photo array to DeJesus was MetroHealth Police Sergeant William Peck ("Sergeant Peck"). After speaking with Sergeant Peck, Detective Durbin learned that DeJesus selected photo 3, depicting Tate as his assailant. DeJesus indicated that he was 100

percent certain of his choice. DeJesus put a small line near this photo and was not able to initial or circle anything on the array because the shooting has rendered him a quadriplegic.

{¶7} Detective Durbin acknowledged on cross-examination that his report erroneously names the suspect as "Eric Tate." He explained that at the time of his investigation, he was involved with two separate felonious assault shootings and made a simple clerical error. The report he prepared for this matter indicates that this suspect lives on Nathaniel Road in Cleveland, which is the address for Keith Tate, not Eric Tate.

{¶8} Sergeant Peck testified that he presented the array to DeJesus at his hospital bedside. Because of his injuries, DeJesus was "doing poorly," but was able to make a "chicken scratch" mark next to photo 3, depicting Keith Tate. Sergeant Peck admitted that the identification did not use the "folder system," of R.C. 2933.83, and that he did not tell DeJesus that the assailant "may or may not be" on the photo array.

{¶9} The trial court concluded that the identification procedure complied with R.C. 2933.83 and denied Tate's motion to suppress. Tate waived his right to a jury trial on the offense of having a weapon while under disability, and the matter proceeded to trial before the jury on the other offenses on July 8, 2015.

{¶10} At trial, DeJesus testified that on September 29, 2013, he went to a gas station at 657 East 152nd Street in Cleveland, Ohio. He observed Tate, whom he knew as "Keith," and the two exchanged words as DeJesus stood up to leave. Tate followed DeJesus as he walked to his car. DeJesus asked, "What's up?" Tate replied, "What's

sup with you?" Tate then pulled out a gun and fired approximately five shots at DeJesus, striking him. As a result of the shooting, DeJesus is now paralyzed from the neck down, and he requires constant care.

{¶11} DeJesus testified that he identified Tate from a photo array the police presented to him when he was in the hospital. DeJesus confirmed this same selection on the same photo array for the jury. He also identified Tate in court for the jury.

{¶12} Detective Durbin testified that approximately 11 days after the shooting, when DeJesus was taken off of a ventilator and could "slightly speak," he went to MetroHealth Hospital to meet with him. Detective Durbin learned the name of the suspect from DeJesus and compiled a six-photo array. Detective Durbin then contacted MetroHealth Police Sergeant William Peck to serve as the "blind administrator." After the administration of the array, in which DeJesus chose Tate's photo, Detective Durbin spoke with DeJesus and confirmed that DeJesus had selected Tate. Because of his paralysis, DeJesus could not write down his degree of certainty, but he told Detective Durbin that he was 100 percent certain.

{¶13} Dr. Nimitt Patel testified that he was the attending surgeon on call when DeJesus was brought into the MetroHealth Emergency Room for treatment of gunshot wounds. During the course of treatment, DeJesus's blood pressure dropped and fluids had to be administered in order to keep DeJesus alive. After surgery, DeJesus required a ventilator in order to breathe. Dr. Patel further testified that because of the severity of the bullet wounds, DeJesus is now a quadriplegic.

{¶14} Following the presentation of the state's case, the defense moved for acquittal of the charges. The trial court denied the motion, and the defense rested. The jury convicted Tate of attempted murder, felonious assault, and all of the specifications. The trial court convicted him of having a weapon while under disability.

{¶15} On July 31, 2015, the trial court sentenced Tate to 11 years, plus 3 years for the firearm specification on the attempted murder charge (Count 1). The trial court determined that the felonious assault convictions (Counts 2 and 3) were allied with the attempted murder conviction. The court also imposed a three-year term for having weapons under disability (Count 4), and ordered that this term be served consecutively to the term imposed for attempted murder, for a total of 17 years of imprisonment.

{¶16} Tate now appeals, assigning the following 13 errors for our review, which shall be discussed together where appropriate.

### Assignment of Error No. 1

[Tate] was denied due process of law when the court overruled [Tate's] motion to dismiss [the indictment,] without a hearing.

### Assignment of Error No. 2

[Tate] was denied his right of confrontation and cross-examination when the court unduly restricted cross-examination.

### Assignment of Error No. 3

[Tate] was denied due process of law when the court admitted Exhibit 1.

### Assignment of Error No. 4

[Tate] was denied due process of law when the court overruled the motion to suppress the identification.

Assignment of Error No. 5

[Tate] was denied due process of [law] and his right to present a defense when the court failed to give an instruction concerning non-compliance with Section 2933.83 of the Ohio Revised Code.

Assignment of Error No. 6

[Tate] was denied due process of law when the court erroneously expanded the definition of "cause" in its instruction.

Assignment of Error No. 7

[Tate] was denied due process of law when the court instructed the jury on a non-element of delay in prosecution.

Assignment of Error No. 8

[Tate] was denied due process of law when the court overruled his motion for judgment of acquittal.

Assignment of Error No. 9

[Tate] is entitled to a new trial as [the verdicts are] clearly against the manifest weight of the evidence.

Assignment of Error No. 10

[Tate] was subjected to a cruel and unusual punishment when the court, by rote recitation, imposed consecutive sentences.

Assignment of Error No. 11

[Tate] was denied due process of law and subjected to multiple punishments when the court failed to merge the offenses of having a weapon [while] under disability with the firearm specification.

Assignment of Error No. 12

[Tate] was denied assistance of counsel when the court precluded [closing] arguments concerning the identification procedure.

Assignment of Error No. 13

[Tate] was denied a fair trial by reason of improper prosecutorial argument.

Motion to Dismiss Indictment

{¶17} In the first assignment of error, Tate argues that the trial court erred when it denied his motion to dismiss the indictment. He claims that he has been subjected to prejudicial preindictment delay and a violation of his right to a speedy trial because a complaint charging him with attempted felonious assault was filed in Cleveland Municipal Court on October 9, 2013, but he was not indicted until February 27, 2015. He also argues that the state failed to use due diligence to serve him with a notice of the proceedings because there was no effort to notify him or arrest him, even though his address was available to police from other prosecutions. In opposition, the state argues that once the indictment was issued, it was promptly served on Tate. The state further argues that speedy trial time is triggered by an indictment, and the municipal court complaint for attempted felonious assault did not begin the speedy trial period.

A.   Preindictment Delay

{¶18} In reviewing a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to the findings of fact made by the trial judge. *State v. Smith*, 8th Dist.

Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 23, citing *State v. Wade*, 8th Dist. Cuyahoga

No. 90029, 2008-Ohio-4574, ¶ 45.

{¶19} Recently, in *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45

N.E.3d 127, the Ohio Supreme Court addressed the issue of preindictment delay and held

that the defendant must demonstrate substantial prejudice. In *Adams*, the defendant was

charged with receiving stolen property in January 1986, after he was found to have the

decedent's ATM card. Later, in 2007, the defendant was charged with the decedent's

murder. In rejecting the defendant's claim that the prosecution was barred by

preindictment delay, the Ohio Supreme Court stated:

> The Due Process Clause of the Fifth Amendment provides limited
> protection against preindictment delay. *United States v. Lovasco*, 431 U.S.
> 783, 789-790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); [*United States v.*]
> *Marion*, 404 U.S. [307] at 324-325, 92 S.Ct. 455, 30 L.Ed.2d 468 [1971].
> We have recognized a comparable due-process protection under Article I,
> Section 16 of the Ohio Constitution. [*State v.*] *Luck*, 15 Ohio St.3d 150, 15
> Ohio B. 296, 472 N.E.2d 1097 [(1984)], at paragraph two of the syllabus.
> *See State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶
> 51-52.
>
> A defendant alleging a due-process violation based on preindictment delay
> must present evidence establishing substantial prejudice to his right to a fair
> trial. *United States v. Rogers,* 118 F.3d 466, 475 (6th Cir.1997); *Walls* at ¶
> 51. Unlike a Sixth Amendment speedy-trial claim, no presumption of
> prejudice arises in the due-process context when a preindictment delay
> exceeds a particular length of time. *United States v. Schaffer*, 586 F.3d
> 414, 425 (6th Cir.2009). But a delay in commencing prosecution is not
> justified when the state uses the delay to gain a tactical advantage or
> through negligence or error ceases its investigation and then later, without
> new evidence, decides to prosecute. *Marion* at 324; *Luck* at 158.
>
> We have held that if the defendant makes a preliminary showing of
> substantial prejudice, then the burden shifts to the state to present evidence
> of a justifiable reason for the delay. *State v. Whiting,* 84 Ohio St.3d 215,

217, 1998-Ohio-575, 702 N.E.2d 1199 (1998); *Walls* at 452-453. Some courts, including the Sixth Circuit, have held that under the Fifth Amendment, the defendant retains the burden of proof at all times and must affirmatively demonstrate both substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage. * * *

The burden upon a defendant seeking to prove that preindictment delay violated due process is "nearly insurmountable," especially because proof of prejudice is always speculative. *United States v. Montgomery,* 491 Fed.Appx. 683, 691 (6th Cir.2012)[.]

Adams has failed to demonstrate substantial prejudice. Indeed, we find no evidence in the record that Adams was prejudiced by the passage of time prior to indictment. His claim thus fails to set forth a violation of the federal or Ohio Constitutions.

*Id.* at ¶ 97-101.

{¶20} Similarly, in this matter, Tate has not explained the nature of the prejudicial effect of the delay, other than vague assertions. As a result, Tate has failed to meet his burden to demonstrate substantial prejudice, and it is unnecessary to consider the reasons for the preindictment delay. *Id.* at ¶ 107. In any event, we note that nothing in the record suggests that the state used the delay to gain a tactical advantage. Therefore, we are unable to conclude that the trial court erred in rejecting the claim of preindictment delay. *Accord State v. Clemmons*, 8th Dist. Cuyahoga No. 99754, 2013-Ohio-5131 (20-month delay between issuance of arrest warrant and indictment, did not result in a due process violation in absence of evidence of substantial prejudice, and the state has no burden of producing evidence of a justifiable reason for the preindictment delay); *State v.*

*McFeeture*, 8th Dist. Cuyahoga No. 100434, 2015-Ohio-1814 (rejecting preindictment delay claim where decedent died in 2006 and investigation extended from 2006 through 2013).

B.    Constitutional Right to Speedy Trial

**{¶21}** The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial.    *State v. O'Brien*, 34 Ohio St.3d 7, 8, 516 N.E.2d 218 (1987).

**{¶22}** In *Barker v. Wingo*, the United States Supreme Court established an ad hoc balancing test that weighs the conduct of both the prosecution and the defendant to determine whether a defendant has been deprived of his constitutional speedy-trial rights.  The four factors to be balanced are "the [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."    *Id*. at 530.    No single factor is determinative; rather, the court should conduct a balancing test.    *Id*.; *State v. Triplett*, 78 Ohio St.3d 566, 568, 1997-Ohio-182, 679 N.E.2d 290 (applying the *Barker* test and concluding that a 54-month delay, a 1989 arrest ending in a 1993 prosecution, while significant, did not bar prosecution).

**{¶23}** In applying these factors to the instant case, we note that the sixteen-month delay, from the time the complaint was filed in Cleveland Municipal Court to when Tate was arrested, is sufficient to trigger inquiry into the other factors.    *Triplett* at 568.    We must next consider whether the delay resulted in any infringement of the defendant's liberty, whether there was extended pretrial incarceration, and whether the defendant

suffered "disruption caused by unresolved charges." *Id.* In this matter, these considerations were not established. Therefore, while the first factor weighs in Tate's favor, its weight is negligible. *Id. Accord State v. Smith,* 8th Dist. Cuyahoga No. 81808, 2003-Ohio-3524, ¶ 12 (finding that a 16-month delay weighed only negligibly in favor of the defendant on his constitutional speedy trial challenge because he was unaware of the indictment, incarcerated on unrelated charges, and there was no evidence of disruption caused by unresolved charges).

{¶24} As to the second factor, Tate maintains that there is no explanation for the delay, and his whereabouts were known in connection with criminal proceedings in Lake County and proceedings in Cuyahoga C.P. No. CR-13-577809, which remained pending from September 2013 until May 2014. In opposition, the state notes that Tate was arrested on a separate matter in Lake County on October 14, 2013, one day before the warrant in this matter was verified. The record indicates that a capias was issued for Tate in CR-13-577809 on October 10, 2013, and a detainer was sent to the Ohio Department of Rehabilitation and Correction on January 27, 2014. Several weeks later, it was determined that Tate was being incarcerated in Lorain county. From the foregoing, we conclude that the several months of delay in this matter is attributable to the government's neglect; therefore, this is to be weighed in Tate's favor. *Triplett* at 569.

{¶25} The third factor, the timeliness of Tate's motion to dismiss, is afforded weight in Tate's favor because the motion was filed approximately five weeks after the

indictment and not at the last minute.   *Triplett* at 570.

**{¶26}** As to the fourth factor, impairment of the defense, there is nothing in the record that affirmatively demonstrates that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence.   *Id.* at 570. This factor does not weigh in Tate's favor.

**{¶27}** By application of the foregoing, we reject Tate's claim of a violation of the Sixth Amendment right to a speedy trial.   *Clemmons*, 8th Dist. Cuyahoga No. 99754, 2013-Ohio-5131.   As a result, the state has no burden of producing evidence of a justifiable reason for the 20-month preindictment delay.   *Accord Brook Park v. Ruzicka*, 8th Dist. Cuyahoga No. 88990, 2008-Ohio-44 (no speedy trial violation where defendant was not incarcerated and was unaware of the pending charges, and was arraigned 10 months after the complaint was issued, 16 months after felony charges were dropped against him, and nearly 18 months after the alleged incident).

C.   Statutory Speedy Trial

**{¶28}** Under R.C. 2945.71(C)(2), a "person against whom a charge of felony is pending * * * [s]hall be brought to trial within [270] days after the person's arrest." Here, Tate was not arrested until March 2, 2015, and the matter proceeded to trial on July 9, 2015.   Therefore, Tate was brought to trial within 270 days and there is no statutory speedy trial violation.

**{¶29}** In accordance with the foregoing, the first assignment of error is overruled.

<u>Identification</u>

**{¶30}** In the second assignment of error, Tate argues that the trial court improperly restricted his cross-examination of Detective Durbin regarding the details of the photo array. Tate claims he was entitled to present information to the jury to show that the identification procedure did not comport with R.C. 2933.83. In his third assignment of error, Tate argues that the trial court erred in admitting exhibit No. 1, a supplemental report on the administration of the photo array indicating that DeJesus had identified Tate, and in admitting improper hearsay about the blind administration of the array. In the fourth assignment of error, Tate argues that the trial court should have suppressed the identification because of alleged noncompliance with R.C. 2933.83. In the fifth assignment of error, Tate argues that the trial court erred in failing to give the jury an instruction that "[the jury] may consider credible evidence of non-compliance and determine the reliability of an eyewitness identification resulting from or related to the lineup."

**{¶31}** As an initial matter, we note that courts apply a two-step test in determining the admissibility of challenged identification testimony: (1) the defendant must demonstrate that the identification procedure was unnecessarily suggestive; and (2) if the defendant meets this burden, the court must consider whether the procedure, under the totality of the circumstances, was so unduly suggestive as to give rise to irreparable mistaken identification. *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997), citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d

140 (1977), and *State v. Garner*, 74 Ohio St.3d 49, 61, 656 N.E.2d 623 (1995). If the defendant fails to meet the first part of his burden, the court need not consider the totality of the circumstances test under the second prong. *State v. Green*, 117 Ohio App.3d 644, 653, 691 N.E.2d 316 (1st Dist.1996). However, if the pretrial procedures were not suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility. *Wills* at 324.

{¶32} R.C. 2933.83 governs the administration of photo lineups and is aimed at preventing the use of unnecessarily suggestive procedures. *State v. Fields*, 8th Dist. Cuyahoga No. 99750, 2014-Ohio-301, ¶ 11; *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 18. R.C. 2933.83 requires any law enforcement agency that conducts photo lineups to adopt specific procedures for conducting the lineups. Such procedures must provide, at minimum, the use of a "blind administrator" for the photo array who does not know the identity of the suspect. The administration involves the use of a folder system or a substantially similar system. R.C. 2933.83(A)(2). The administrator conducting the lineup must make a written record of the lineup that includes all results obtained during the lineup, the names of all persons at the lineup, the date and time of the lineup, and the sources of the photographs used in the lineup. R.C. 2933.83(B)(4). The administrator is also required to inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know the identity of the suspect. R.C. 2933.83(B)(5).

**{¶33}** When evidence of failing to comply with R.C. 2933.83 is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup. However, R.C. 2933.83(C)(1) does not provide an independent basis upon which to suppress evidence, and a trial court errs in solely relying on the statute in suppressing an identification. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722.

A.    Cross-Examination of Detective Durbin During Trial

**{¶34}** In the second assignment of error, Tate challenges the court's limitation on the cross-examination of Detective Durbin during trial regarding the details of the photo array. We note that a trial court has broad discretion concerning the admission of evidence, and in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904.

**{¶35}** In the instant case, we find no abuse of discretion because the record reveals that the trial court only sustained two objections during Tate's cross-examination of Detective Durbin. In the first instance, Tate sought to cross-examine Detective Durbin on the fact that individual pictures were not presented to DeJesus. After reviewing the record, we conclude that the trial court may have properly concluded that this questioning represented a challenge to the identification procedure, and not just credibility or reliability, after the trial court had already ruled the identification to be admissible. In

the second instance, Tate sought to cross-examine Detective Durbin about the involvement of another officer, Detective Lynch, who did not testify, and the issue of his involvement was not raised during Detective Durbin's direct testimony. Therefore, we find no abuse of discretion in connection with the court's ruling.

{¶36} The second assignment of error is overruled.

B. Admission of Exhibit No. 1 and Hearsay

{¶37} In the third assignment of error, Tate complains that the court erred in admitting Sergeant Peck's supplemental report on DeJesus's identification of Tate and in permitting Detective Durbin to testify regarding Sergeant Peck's involvement because Sergeant Peck did not testify at trial.

{¶38} We note that Sergeant Peck testified during the suppression hearing and explained his involvement as the blind administrator identified in exhibit No. 1, the photo array. At trial, Detective Durbin testified that he filled out exhibit No. 1 and went over the document with Sergeant Peck and again with DeJesus to confirm that DeJesus had identified Tate. In addition, DeJesus testified at trial that (1) Tate was the assailant; (2) he knew Tate from the neighborhood; (3) he selected Tate from the photo array; and (4) he verified his selection and he was "100 percent" certain of this selection when he was shown exhibit No. 1 again during trial. Therefore, we conclude that the trial court did not err in admitting this evidence.

{¶39} The third assignment of error is overruled.

C. Denial of Motion to Suppress

**{¶40}** In the fourth assignment of error, Tate argues that the trial court erred in denying his motion to suppress because the state did not comply with R.C. 2933.83 by presenting the photos together as an array. He also argues that the identification should have been suppressed because DeJesus did not testify at the suppression hearing, and DeJesus did not complete all of the writing on the identification form.

**{¶41}** This court has previously found that it is not improper under R.C. 2933.83 to use a "six-pack" form for the arrays. *State v. Quarterman*, 8th Dist. Cuyahoga No. 99317, 2013-Ohio-4037, ¶ 29. In the instant case, the photo array was properly administered by a blind administrator who did not know the individuals depicted in the photos and did not know the suspect. The form attached to the array indicated that the suspect may or may not be in the array, and that the administrator did know the identity of the suspect. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 31-33. Therefore, the trial court did not err in admitting the photo array identification into evidence.

**{¶42}** Further, even if the administration of the photo lineup to the victim did not comply with the statute, any impropriety regarding the photo lineup identification would not have been prejudicial. Although DeJesus did not testify at the suppression hearing and could only make "chicken scratch" near the photo of Tate, it is beyond dispute that DeJesus knew his assailant prior to the shooting and spoke with him immediately prior to the incident. DeJesus also informed the police before the array was presented that the shooter was Keith Tate who lived on Nathaniel Road. In addition, DeJesus identified

him during the photo array and again during trial, and testified at trial that he was certain that Tate was the assailant and that he knew him.   *Howard* at ¶ 34.

**{¶43}** The fourth assignment of error is overruled.

D.   R.C. 2933.38 Curative Jury Instruction

**{¶44}** In the fifth assignment of error, Tate argues that the trial court erred in failing to give the jury an instruction that "[the jury] may consider credible evidence of non-compliance and determine the reliability of an eyewitness identification resulting from or related to the lineup."

**{¶45}** We recognize that if evidence of failure to comply with R.C. 2933.83 is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.

**{¶46}** In *Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, this court held that the curative R.C. 2933.38 jury instruction was not required where the police presented a photo array, instead of using the folder system, and the court gave the standard general instruction on credibility of witnesses and weighing the testimony of identifying witnesses.   In *Wells*, the trial court instructed the jury to consider "all surrounding circumstances under which the witness has identified the defendant, including deficiencies, if any, photo displays, or one-on-one."   *Id.* at ¶ 100.   Similarly, in this matter, there is insufficient evidence of noncompliance with R.C. 2933.83, and the

court gave the same standard general instruction on credibility of witnesses and weighing the testimony of identifying witnesses as referenced in *Wells*.

{¶47} Therefore, the fifth assignment of error is overruled.

Jury Instructions

A.  Standard of Review

{¶48} We review the court's charge for an abuse of discretion. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 73. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Wells* at ¶ 103.

B.  Natural and Foreseeable Consequences

{¶49} In the sixth assignment of error, Tate argues that the trial court's instruction on "cause" that included a reference to the "natural and foreseeable consequences" of a defendant's act, is erroneous because this undermined the state's burden of showing that Tate acted purposely.

{¶50} Here, the court's instruction is taken from Ohio Jury Instructions. In *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, the Ohio Supreme Court concluded that this instruction was not prejudicially erroneous. In that case, the defendant was charged with aggravated murder and the jury was given extensive instructions on the state's burden of proof and the requirement to prove purpose to kill, both before and after the foreseeability instruction was given to the jury. Similarly, in

this matter, the instructions as a whole made clear that the jury was required to find purpose to kill in order to convict.

**{¶51}** Further, the use of this instruction has been upheld in connection with charges involving murder, aggravated robbery, and felonious assault. *Driggins,* 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, at ¶ 81; *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 66.

**{¶52}** This assignment of error is without merit.

C.   Delay Instruction

**{¶53}** In the seventh assignment of error, Tate argues that the trial court violated his right to a fair trial by giving the jury an instruction on the delay between the shooting and the commencement of the trial.

**{¶54}** Here, the entirety of the instruction stated that

> any delay that occurred between the date of the incident and the presentment of this case to you cannot be considered in determining the guilt or innocence of the accused.
>
> Such delays, whether permissible or not, present matters for the Court and not for the jury.   Any delay in this case can be considered solely for the purpose of testing the accuracy of a witness's memory and/or the credibility of any witness's testimony.

**{¶55}** We conclude that the jury instruction is accurate and fair, and that it did not prejudice Tate's right to a fair trial.

**{¶56}** Accordingly, the seventh assignment of error is overruled.

Motion for Acquittal

**{¶57}** In the eighth assignment of error, Tate contends that the trial court erred in denying his motion for acquittal of attempted murder. Tate argues that "[w]hile DeJesus suffered injuries, the evidence was not sufficient to prove that defendant had a specific intent to cause [his] death[.]"

**{¶58}** Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29(A), a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction[.]" *See also State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus ("Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven by a reasonable doubt.").

**{¶59}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

**{¶60}** In *State v. Barrow*, 8th Dist. Cuyahoga No. 101356, 2015-Ohio-525, this court noted that

[w]hether an offender had the specific intent to kill is a fact-dependant inquiry, which can include reviewing the nature of the instrument used, the lethality of the instrument, and the manner in which the wound was inflicted. *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 23, citing *State v. Pound*, 2d Dist. Montgomery No. 16834, 1998 Ohio App. LEXIS 4364, *3 (Sept. 18, 1998); and *State v. Robinson*, 161 Ohio St. 213, 218-219, 118 N.E.2d 517 (1954). A firearm is an inherently dangerous instrument. *Id*. The specific intent to kill may be reasonably inferred from that fact, especially when accompanied with evidence demonstrating the offender's intent to use the firearm. *Id*.; *see also State v. Brown*, 8th Dist. Cuyahoga No. 92814, 2010-Ohio-661, ¶ 52 (death is the natural and probable consequence of shooting a gun at someone); *State v. Wilson*, 8th Dist. Cuyahoga No. 96098, 2011-Ohio-5653, ¶ 6 (evidence that the offender fired a handgun at a police officer from close range was sufficient evidence of attempted murder despite the fact that the officer was not hit by any bullets).

*Id*. at ¶ 16.

{¶61} Here, when viewing the evidence presented in a light most favorable to the state, we conclude the record demonstrates that the essential elements of attempted murder were proven beyond a reasonable doubt. The state's evidence demonstrated that Tate and DeJesus exchanged words at the gas station. The state also demonstrated that

as DeJesus walked toward his car to drive away, Tate fired approximately five shots at him, with two of the shots striking DeJesus and severely and permanently injuring him. Specifically, the use of a gun, an inherently dangerous instrumentality, which was repeatedly fired at DeJesus, establishes the requisite intent in this matter.

{¶62} Therefore, the eighth assignment of error is overruled.

Manifest Weight of the Evidence

{¶63} In the ninth assignment of error, Tate argues that his convictions are against the manifest weight of the evidence because DeJesus gave conflicting and contradictory testimony regarding whether he knew Tate and whether they were in an altercation prior to the shooting.

{¶64} The *Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 court explained the manifest weight of the evidence as follows:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) Black's [Law Dictionary (6 Ed.1990)], at 1594.
>
> When a court of appeals reverses a judgment of a trial court on the basis

that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [Quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982)]. *See also State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541. (Emphasis sic.)

**{¶65}** In this matter, the state's evidence demonstrates that DeJesus and Tate exchanged words at the gas station. The evidence further demonstrates that as DeJesus walked toward his car to drive away, Tate repeatedly fired a gun at DeJesus, striking and permanently injuring him. It is clear, viewing the record as a whole, that Tate and DeJesus knew each other prior to the shooting, that they exchanged some words at the gas station. Tate followed DeJesus to his car, then repeatedly fired his weapon, striking DeJesus. Therefore, we conclude that the jury did not lose its way and did not create a manifest miscarriage of justice in convicting Tate of attempted murder herein.

**{¶66}** Accordingly, the ninth assignment of error is overruled.

Sentence

**{¶67}** In the tenth assignment of error, Tate argues that in imposing consecutive sentences herein, the trial court did not fulfill its duties under R.C. 2929.14(C), and instead simply recited "talismanic words." He also argues that the sentence is disproportionate to other offenders because there are no facts indicating that his conduct was "more serious than conduct normally constituting the offense."

**{¶68}** Pursuant to R.C. 2953.08(G)(2), we may modify or vacate a sentence if we find by clear and convincing evidence that the record does not support any relevant findings required under R.C. 2929.14(C)(4). *State v. Marcum*, Slip Opinion No. 2016-Ohio-1002, ¶ 22. *See also State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37; *State v. Caldero*, 8th Dist. Cuyahoga No. 102523, 2015-Ohio-4498, ¶ 20. The *Marcum* court stated:

> [A]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Id.* at ¶ 22-23.

**{¶69}** R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis when imposing consecutive prison sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the

offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4); *Caldero* at ¶ 20.

{¶70} In complying with R.C. 2929.14(C)(4), however, a

> word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.

*Caldero* at ¶ 29; *State v. Davila*, 8th Dist. Cuyahoga No. 99683, 2013-Ohio-4922, ¶ 9 (the use of "talismanic words" is not necessary, as long as it is clear from the record that the trial court actually made the required statutory findings.).

{¶71} In this matter, the trial court concluded that Tate did not take responsibility for his actions or show any remorse. The court concluded that consecutive sentences were necessary to protect the public from future crime from Tate and to punish him for severely injuring DeJesus. The court also concluded that the sentence is not disproportionate to the seriousness of his conduct and to the danger Tate poses to the

public.  The court additionally noted that Tate committed the offenses while he was under indictment in case number CR-13-577899.  The court stated:

> Also, as I said, at least two of these multiple offenses were committed as part of one course of conduct, and caused by him having the gun, and shooting this man was so great that no single prison term will adequately reflect the seriousness of his conduct.
>
> And, of course, his history of criminal conduct, even I have had him before, his record is so long.  His criminal conduct stems back to attempted drug trafficking in 2006, then again in 2007, drug trafficking, then possession, trafficking, obstruction of official business, all while he was a juvenile. Then as an adult, he continued on with drug trafficking and schoolyard specs, driving under suspension, [and] drug abuse.
>
> Another drug trafficking case in 2011.  Driving under suspension, drug abuse, receiving stolen property motor vehicle, drug possession, failure to comply with order or signal of police officer, then we get to attempted murder with a gun.
>
> So for all those reasons, the court is going to sentence the defendant to 11 years on Count 1 with the three-year firearm spec running prior to and consecutive with the 11 years, and all of that will be consecutive with 3 years on Count 4, having a weapon while under disability.

{¶72} In this matter, after a careful review of the record, we find that the record clearly and convincingly demonstrates that the trial court made the requisite R.C. 2929.14(C)(4) findings.  The trial court found on the record that consecutive sentences are necessary to protect the public from future crime by Tate and to punish him.  The court also stated that the consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public.  In this regard, the record does not support Tate's claim that the sentence is disproportionate because the conduct was "not more serious than conduct normally constituting the offense."  We note that

DeJesus required emergency surgery, was placed on a ventilator, was near death before fluids were administered, and was rendered a quadriplegic from the shooting. The evidence also indicates that the shooting was completely unprovoked. In addition, the court noted that the offenses were committed while Tate was under indictment in Case No. CR-13-577899, and that Tate has an extensive criminal history. These findings satisfy the requirements of R.C. 2929.14(C)(4).

{¶73} Accordingly, the tenth assignment of error is overruled.

### Merger

{¶74} In the eleventh assignment of error, Tate argues that the trial court erred by failing to merge the offense of having a weapon while under disability with the firearm specification from the attempted murder conviction.

{¶75} This exact argument has been previously considered and rejected by this court. *See State v. Cannon*, 8th Dist. Cuyahoga No. 100658, 2014-Ohio-4801, ¶ 58; *State v. Shepherd*, 8th Dist. Cuyahoga No. 99503, 2013-Ohio-4912, ¶ 8; *Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 94.

{¶76} Therefore, this assignment of error is overruled.

### Argument of Counsel

{¶77} In the twelfth assignment of error, Tate argues that the trial court erred in prohibiting him from arguing that the state's identification procedures failed to comply with R.C. 2933.38.

{¶78} A party has wide latitude in stating what the evidence demonstrates, the reasonable inferences that may be drawn from it, and may also comment on those inferences during closing argument. *State v. Smith*, 80 Ohio St.3d 89, 111, 1997-Ohio-355, 684 N.E.2d 668. However, a party may not invite the jury to reach its decision on matters outside the evidence adduced at trial. *State v. Hart*, 94 Ohio App.3d 665, 672, 641 N.E.2d 755 (1st Dist.1994).

{¶79} In this matter, defense counsel stated that Detective Durbin "was not in the room when Sergeant Peck of the MetroHealth Police Department went into the room in connection with the case. And certainly this is not the best way to show * * * an identification." The court properly sustained the state's objection to this argument since R.C. 2933.83 specifically requires the use of the blind administrator.

{¶80} Therefore, the twelfth assignment of error is overruled.

Prosecutorial Misconduct

{¶81} In the thirteenth assignment of error, Tate argues that the prosecutor engaged in misconduct by improperly commenting on Tate's appearance stating, "[just before closing arguments,] the nice man who looks clean cut now but had his beard this morning. In an identification case, he shaved while you were at lunch." Tate further complains that the prosecutor improperly played a video of the shooting during his closing argument.

{¶82} Prosecutors may not invade the realm of the jury by rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the

record. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 493, 1999-Ohio-283, 709 N.E.2d 484. The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92.

{¶83} We note that in *State v. Guilford*, 11th Dist. Lake No. 96-L-196, 1997 Ohio App. LEXIS 5434 (Dec. 5, 1997), the court considered a prosecutor's comments that the accused had changed his physical appearance prior to trial to "fool" the jury so that they would not recognize him from a video offered into evidence. Although there was no evidence in the record about the accused's appearance, the court held that the comment was not improper. Similarly, we cannot conclude that this single comment deprived Tate of a fair trial.

{¶84} As to the video, the record demonstrates that the video was admitted into evidence as a trial exhibit. Therefore, we find no prosecutorial misconduct in connection with this exhibit.

{¶85} Accordingly, the thirteenth assignment of error is overruled.

{¶86} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
EILEEN T. GALLAGHER, J., CONCUR